UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DALE A. SMITH, | ) Case No. 3:18CV0622 |
| Plaintiff, | ) |
| v. | ) JUDGE JAMES G. CARR |
| | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) REPORT AND RECOMMENDATION |

Plaintiff Dale A. Smith ("Smith" or "claimant") has challenged the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Commissioner's final decision should be affirmed.

**I. PROCEDURAL HISTORY**

On June 6, 2014, the claimant protectively filed an application for a period of disability and DIB, alleging disability beginning March 10, 2007. (R. 10, tr., at 37, 228-234, 277-291.) The claimant's application was denied initially and upon reconsideration. *Id.* at 117-143, 144-157. Thereafter, the claimant filed a request for a hearing before an administrative law judge ("ALJ"). *Id.* at 178-179. The ALJ held a hearing on February 28, 2017. (R. 10, tr., at 54-109.) Claimant appeared at the hearing, was represented by counsel, and testified. *Id.* at 56, 60-76. A vocational expert ("VE") attended the hearing and provided testimony. *Id.* at 56, 96-106. On

May 2, 2017, the ALJ concluded claimant was not disabled. *Id.* at 37-47. The Appeals Council denied Smith's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 1-3.

On March 17, 2018, Smith filed a complaint challenging the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case. Smith asserts the ALJ erred when evaluating the opinions from Smith's treating physician, Dr. Craig Thompson, and nursing aides, as well as when finding that Smith can perform sedentary work. (R. 11, PageID #: 1161.)

## II. PERSONAL BACKGROUND INFORMATION

Smith was born in 1964 and was 48 years old on the date last insured. (R. 10, tr., at 46, 228, 277.) He has at least a high school education, is able to communicate in English, and has past work as a fabricator and a quality assurance technician/inspector. (R. 10, tr., at 45, 46, 96, 280, 282.)

## III. RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Smith's brief alleging error by the ALJ. As noted earlier, Smith applied for DIB benefits on June 6, 2014, alleging disability beginning March 10, 2007. (R. 10, tr., at 37, 228-234.) Smith listed the conditions that limit his ability to work as "degenerative disc disease, lower back injury, [and] neck injury." *Id.* at 281.

In January 2007, Smith's treating physician Craig S. Thompson, M.D., referred him to neurologist Noel Eboh, M.D., for neck, left shoulder and arm pain over the previous month, and

---

[1] The summary of relevant medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

2

evaluation of an MRI of the cervical spine. (R. 10, tr., at 419; *see also* 398-400, 1044.) On January 30, 2007, Dr. Eboh indicated that Smith reported "neck, left shoulder, and arm pain since Christmas[;]" "[t]here was no known trauma associated with this[;]" "patient had slept on a couch before this thing started[;]" and prescription medication did not resolve Smith's complaints of pain. *Id.* at 419. Examination confirmed neck restriction on rotation, and positive foraminal sign to the left. *Id.* Dr. Eboh reviewed x-rays and MRIs of the cervical spine, which confirmed diffuse spondylosis. *Id.* There was no ruptured disk nor spinal canal stenosis, but there was evidence of scattered foraminal narrowing. *Id.* Dr. Eboh's plan was to administer "a short course of steroids to be followed by naproxen for another two weeks, and then a re-evaluate him." *Id.*

Counsel's hearing brief states that Smith had a lapse in health insurance which began after several epidural steroid blocks were administered in February and March 2007, and indicates he did not resume treatment until 2013, when he was insured again. (R. 10, tr., at 345-346; *see also* R. 10, tr., at 419-32).) After Smith's date last insured (December 31, 2012) (R. 10, tr., at 37, 47), Dr. Eboh resumed cervical epidural steroid injections on July 31, 2013. *Id.* at 436. The epidural steroid injections did not resolve Smith's pain and Robert Crowell, M.D., performed an anterior cervical decompression with anterior cervical fusion with plate on September 10, 2013. (R. 10, tr., at 443, 485.) On November 21, 2013, Dr. Eboh explained to Smith that this was a fusion of two segments of his neck, which would lead to some restriction in full extension of his neck, but which should improve over time. *Id.* at 486. Dr. Eboh recommended that he remain active, and suggested he pursue aquatic exercises on a regular basis. *Id.*

On initial review, state agency physician Bruce Mirvis, M.D., completed a physical residual functional capacity assessment on August 29, 2014. (R. 10, tr., at 124-126.) Dr. Mirvis opined that Smith was limited to lifting and carrying twenty pounds occasionally, and ten pounds frequently. *Id.* at 124. The claimant was capable of standing or walking for four hours of an eight-hour workday, and sitting for about six hours of an eight-hour workday. *Id.* Claimant was limited in both arms to occasional pushing or pulling, due to severe cervical spine pain; and he could occasionally climb ramps or stairs, and never climb ladders, ropes or scaffolds. *Id.* at 124-25. He could frequently balance or stoop, and occasionally kneel, crouch, or crawl. *Id.* The postural limitations on climbing ladders, ropes or scaffolds were due to back pain and COPD. *Id.* Dr. Mirvis found that Smith was limited bilaterally in reaching overhead, due to neck pain. *Id.* Smith needs to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, as well as hazards such as machinery or heights. *Id.* at 126. Dr. Mirvis noted, however, that "there is insufficient evidence to evaluate [claimant's] condition prior to 06/01/2013." *Id.*

On reconsideration, state agency physician Gerald Klyop, M.D., completed a physical RFC assessment on December 20, 2014. (R. 10, tr., at 152-154.) Dr. Klyop adopted the same limitations that Dr. Mirvis had assessed. *Id.*

On February 10, 2015, Dr. Thompson authored a letter, "To whom it may concern," indicating that he has been a primary care physician for Smith over the past twenty years. (R. 10, at 651.) The doctor noted his records indicate that, after a spinal injury in a 2006 workplace accident, "the patient went back to work through March 2007 but was simply unable to continue working at his current job due to pain and immobility and weakness." *Id.* Dr. Thompson opined

4

that "Mr. Smith was completely unemployable from March 10, 2007 to present time of February 10, 2015," due to multiple health problems resulting from the workplace accident. *Id.*

Dr. Thompson indicated that Smith had a surgical fusion procedure which led to some improvement in his right arm, but he continued to have "significant limited mobility of the arms and legs and limited strength and pain." (R. 10, at 651.) The doctor opined that, from March 2007 to the present (then, February 2015), Smith has been unable to lift more than five pounds on a regular basis and has been unable to sit or stand longer than thirty minutes at a time. *Id.* When sitting and standing, he requires hourly breaks to lie down to alleviate his pain. *Id.* In addition, Smith has required the use of a cane to walk since early 2010. *Id.* Dr. Thompson concluded that "Smith was certainly and definitely unable to work from March 2007 through December 2012 due to his related back pain and limitations in range of motion." *Id.*

### IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his May 2, 2017, decision:

> 1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 10, 2007, through his date last insured of December 31, 2012 (20 C.F.R. 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: cervical degenerative disc disease, lumbar facet arthropathy, and obesity (20 C.F.R. 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to

5

perform sedentary work as defined in 20 CFR 404.1567(a) except with occasional operation of hand controls; no more than frequent reaching overhead; occasionally climbing ramps and stairs, no climbing ladders, ropes, or scaffolds; frequent balancing and stooping; occasional kneeling, crouching, and crawling; and frequent exposure to unprotected heights, dangerous moving parts or workplace hazards.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. 404.1565).

7. The claimant was born on April 26, 1964, and was 48 years old which is defined as an younger individual age 18-44 [*sic*], on the date last insured (20 C.F.R. 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not been under a disability, as defined in the Social Security Act, at any time from March 10, 2007, the alleged onset date, through December 31, 2012, the date last insured (20 C.F.R. 404.1520(g)).

(R. 10, tr., at 39, 40, 41, 45, 46, 47.)

### V. DISABILITY STANDARD

A claimant is entitled to receive DIB benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. § 404.1520(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* §404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

### VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final

7

benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *DeLong v. Commissioner*, 748 F.3d 723, 726 (6th Cir. 2014); *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

### VII. ANALYSIS

#### A. Treating Physician's Opinion

Smith contends that the ALJ erred as a matter of law by improperly evaluating the opinion of his treating physician, Dr. Thompson. (R. 11, PageID #: 1161, 1169-1170.) Dr. Thompson provided an opinion dated February 10, 2015, which states that Smith was disabled and completely unemployable. *Id.* at 1169-1170. The ALJ concluded that the opinion was not entitled to any probative weight. (R. 10, tr., at 44.) As set forth below, the court finds no error in the ALJ's decision.

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[2] *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often well-equipped to provide a complete picture of the individual's health and treatment history. *Id*.; 20 C.F.R. § 404.1527(c)(2). The treating physician doctrine requires opinions from treating physicians to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. In other words, treating physicians' opinions are only given deference when supported by objective medical evidence. *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician. *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3. Those good reasons must be supported by evidence in the case record; and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion and the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakley*, 581

---

[2] Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017. 82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017). Plaintiff's claim was filed before March 27, 2017, before the new regulations took effect. For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision.

F.3d at 406-407; *Winning v. Commissioner*, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p).

The ALJ indicated that the relevant time period to the decision was from the alleged onset date, March 10, 2007, through the date last insured, December 31, 2012. (R. 10, tr., at 37.) The ALJ's decision assessed Dr. Thompson's opinion as follows:

> The undersigned considered the opinions of Craig Thompson, MD. In August 2013, Dr. Thompson noted the claimant "*is very much disabled due to his upper and lower back pain and discomfort*" (Exhibit 6F/99). This statement is not entitled to any degree of probative consideration for multiple reasons. First, the doctor does not provide sufficient clinical and laboratory data to support his conclusion, and the undersigned takes note that there are no records from Dr. Thompson before the expiration of the claimant's date last insured. He does not provide a detailed function-by-function analysis that demonstrates the inability to perform any type of gainful activity. Lastly, his conclusion of disability addresses an area that is specifically reserved to the Commissioner under Social Security Ruling 96-5p. Therefore this statement is not entitled to any significant weight. In February 2015, Dr. Thompson provided a letter on the claimant's behalf indicating in part "*My medical opinion is that* [the claimant] *was completely unemployable from the time period of March 10, 2007 to present time*" and "*... was certainly and definitely unable to work from March 2007 through December 2012 due to his related back pain and limitations in range of motion* (Exhibit 10F). Again, these statements are not entitled to significant weight for the same reasons as above. In addition, Dr. Thompson's letter was rather vague, and he premised his opinion on "*My understanding is that he has had a crush injury to his spine by some type of machine at work...*" However, there is no such information documented in the record or findings suggestive of same.

(R. 10, tr., at 44, emphasis in original.)

In response to the ALJ's contention that "there are no records from Dr. Thompson before the expiration of the claimant's date last insured," (R. 10, tr., at 10), the claimant points to references to Dr. Thompson in his testimony (R. 11, PageID #: 1169, citing tr., at 64, 73), and the fact that one of Dr. Eboh's progress notes refers to Dr. Thompson as the referring physician (*id.*, citing tr., at 400). But the pertinent issue is not whether Dr. Thompson treated Smith at an earlier point in time. Rather, the ALJ did not find Dr. Thompson's opinion supportable because, in part,

10

"the doctor does not provide sufficient clinical and laboratory data to support his conclusion, and the undersigned takes note that there are no records from Dr. Thompson before the expiration of the claimant's date last insured." (R. 10, tr., at 44.) Smith fails to point to any records that undermine the ALJ's findings or conclusions. *See generally* R. 11, PageID #: 1169-1170.

Smith, however, emphasizes that Dr. Thompson had been his treating physician for over twenty years, and that Dr. Thompson found that Smith was disabled and "completely unemployable." (R. 11, PageID #: 1169-1170.) Therefore, Smith argues, the ALJ erred as a matter of law in dismissing the evidence provided by his treating physician. *Id.* at 1170.

As the ALJ correctly states (R. 10, tr., at 44), Dr. Thompson's statements of Smith's disability (such as, that he is "completely unemployable") address an area that is specifically reserved to the Commissioner. The issue of disability is a legal, not a medical issue, and therefore is reserved solely to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1); *Vance*, 2008 WL 162942, at *3; *Walker v. Secretary, HHS*, 980 F.2d 1066, 1070 (6th Cir. 1992). Accordingly, opinions on the ultimate issue of disability, regardless of their source, are not entitled to any particular weight or deference. *Schuler v. Commissioner*, No. 03-3734, 2004 WL 2030280, at *4 (6th Cir. Sept. 8, 2004); *see generally* 20 C.F.R. §§ 404.1527(d)(1),(3).

Moreover, a treating physician's opinion is only given deference when it is supported by objective medical evidence. *Vance*, 2008 WL 162942, at *3. The ALJ determined that Dr. Thompson's opinion was not supportable because, in part, "the doctor does not provide sufficient clinical and laboratory data to support his conclusion[,]" there are no records from Dr. Thompson between the alleged onset date and the date last insured—March 10, 2007 to December 31, 2012–and the doctor did not provide a function-by-function analysis demonstrating the inability to perform any type of gainful activity (R. 10, tr., at 44; *see* 20 C.F.R. § 404.1527(c)(3).) Thus,

11

the ALJ reasonably determined that Dr. Thompson's opinion was not well-supported by record evidence of medically acceptable clinical and laboratory diagnostic techniques, as discussed above. *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.

Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations. *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 404.1527(c). Although the ALJ is directed to consider the factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in his decision. *Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011). The ALJ's decision considered the treatment relationship and the length of the relationship (noting Dr. Thompson's statement that he had been treating Smith for 20 years). *See generally* 20 C.F.R. § 404.1527(c)(2). In addition, the decision addressed the supportability factor, as indicated above. *See generally* 20 C.F.R. § 404.1527(c)(3). The ALJ thus considered the proper factors in determining how much weight to afford Dr. Thompson's opinion. *Francis*, 2011 WL 915719, at *3; *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 404.1527(c).

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545. The court finds the ALJ provided good reasons for the weight assigned to Dr. Thompson's opinion that are supported by substantial evidence in the record; they are sufficiently specific to make clear the weight assigned to the treating physician's opinion, and the reasons for that weight. *See Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407; *Winning*, 661 F.Supp.2d at 818-819.

**B. Nursing Aides**

Smith contends that the ALJ "committed reversible error in failing to accord any weight whatsoever to the medical opinions and assessments of the State Tested Nursing Aides, Mr. Smith's care providers." (R. 11, PageID #: 1161, 1172.) The claimant states that he has received continuous care from State Tested Nurse Aides ("STNA"), Linda Smith[3] and Sally Kauble,[4] and asserts the ALJ's reasons for rejecting their testimony that claimant has been seriously limited in his ability to perform activities of daily living are not supported by substantial evidence. *Id.* at 1172.

The ALJ has the responsibility for reviewing all the evidence in making his determinations. 20 C.F.R. § 404.1527(e)(2). Moreover, the ALJ will consider any statements that have been provided by medical sources, whether or not based on formal medical examinations. 20 C.F.R. § 404.1545(a)(3). The ALJ addressed the aides' evidence as follows:

> The undersigned also considered Mrs. Smith's and Ms. Kauble's testimony, as well as letters written on the claimant's behalf (Exhibits 13E; 14E; 15E; 24E). First, while Mrs. Smith [and] Ms. Kauble . . . identify themselves as State Tested Nurse Aides (STNA) . . . they are not acceptable medical sources under the regulations. Regardless, the undersigned considered their observations and the information they provided. The testimony and reports are not entirely supported by evidence of record. Importantly, the question is not whether the claimant is currently limited, but what degree of limitation does the evidence support prior to the expiration of the claimant's date last insured in December 2012. Therefore,

---

[3] Linda Smith ("Mrs. Smith") is claimant's wife. (R. 10, tr., at 329.) The ALJ's decision addressed her testimony at the hearing and an undated letter to the Social Security Department regarding Smith's efforts to find employment from 2007 to 2008, to go to school from 2009 to 2010, her observations of Smith's health conditions between 2007 and 2016, and the homecare she has provided. *Id.* at 41, 43, 44-45, 80-89, 329.

[4] Ms. Kauble testified at the hearing and authored a letter to the Social Security Department dated September 23, 2015. *Id.* at 331-32. She identified herself as a co-worker of Mrs. Smith, a friend of the family, and testified that in or around 2010 she started helping claimant and Mrs. Smith with self-care activities, meal preparation, household chores, and transportation. *Id.* at 90-92. The ALJ's decision also addressed her testimony at the hearing and letter. *Id.* at 44-45.

> the undersigned finds the testimony and report of these individuals unpersuasive to further reduce the claimant's above-assessed functional capacity for the period at issue.

(R. 10, tr., at 44-45.)

The claimant recognizes that Mrs. Smith and Kauble, as STNAs, are not "acceptable medical sources" within the meaning of the regulations (R. 11, PageID #: 1172), therefore they cannot render a "medical opinion." *See generally Meuzelaar v. Commissioner*, No. 15-2341, 2016 WL 2849305, at *2 (6th Cir. May 16, 2016); *McNamara v. Commissioner*, No. 15-1231, 2015 WL 8479642, at *1 (6th Cir. Dec. 10, 2015) (per curiam) (citing 20 C.F.R. § 416.913(d)(1)); *see also* 20 C.F.R. § 404.1513(a); SSR 06-3p, 2006 WL 2329939, at *1. Because an STNA is not considered an "acceptable medical source" under the regulations, an ALJ is not required to give any special deference to an STNA's evidence. *Noto v. Commissioner*, No. 15-1309, 2015 WL 7253050, at *4 (6th Cir. Nov. 16, 2015).

Although information from other sources such as a nurse practitioner or an STNA cannot establish the existence of an impairment, "the information may provide insight into the severity of the impairment," and how it affects the individual's ability to function. SSR 06-3p, 2006 WL 2329939, at *2; *McNamara*, 2015 WL 8479642, at *1; *Cruse v. Commissioner*, 502 F.3d 532, 541 (6th Cir. 2007). The ALJ must consider the other source's evidence, and how much weight to give to it. *Meuzelaar*, 2016 WL 2849305, at *2 (citing *Cruse*, 502 F.3d at 541). In evaluating such evidence, the ALJ should consider factors such as the length of the treating relationship, the consistency with other evidence, and how well the sources explain their opinion. *McNamara*, 2015 WL 8479642, at *1; *Reynolds v. Colvin*, No. 1:12CV2994, 2013 WL 5316578, at *7 (N.D. Ohio Sept. 23, 2013).

14

The ALJ has discretion to assign "other source" evidence any weight he deems appropriate, *Noto*, 2015 WL 7253050 at *4 (citing *Walters*, 127 F.3d at 530; *Engebrecht v. Commissioner*, 572 Fed.Appx. 392, 397-398 (6th Cir. 2014)), as long as the assessment is based on the evidence of record. The ALJ here stated that he considered the observations of the STNAs, and the information they provided. (R. 10, tr., at 44.) The ALJ determined that their testimony and letters were not entirely supported by evidence of record, and found their evidence lacking in terms of "what degree of limitation . . . the evidence of record support[s] prior to the expiration of the claimant's date last insured in December 2012." *Id.* at 44-45. Indeed, when reading the decision as a whole, it is apparent that the ALJ determined before the date last insured "December 31, 2012, the objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in pain or symptoms of such severity or frequency as to preclude the range of work described above" in the decision. *Id.* at 43. In addition, the letters and testimony contain no description of any treatment provided and no functional restrictions are noted or recommended. As the ALJ noted, there are no medical records from early 2007 to early 2013 (*id.* at 42), and the testimony or letters "are not entirely supported by the evidence of record." *Id.* at 44.

In accordance with SSR 06-3p, the ALJ was required to consider the letters and testimony, and he did so. The ALJ provided sufficient discussion of the evidence of these other sources to allow the court to follow his reasoning. *See* SSR 06-3p, 2006 WL 2329939, at *6. The ALJ's consideration of the other source evidence is supported by substantial evidence.

### C. RFC Finding

Smith's final assignment of error is that:

The ALJ's finding that Mr. Smith can perform sedentary work is not based on substantial evidence, as such a finding is not supported by the record when the

15

> ALJ failed to assess the Plaintiff's limitations within the relevant time period for Title II benefits between the alleged onset date and date last insured ("DLI") of December 31, 2012.

(R. 11, PageID #: 1161, 1175.) The claimant argues that neither the reports of Dr. Thompson, nor the evidence of the STNAs, support a finding that the claimant can do either sedentary or light work. *Id.* at 1177. He contends that the ALJ cited to no medical evidence in support of his RFC assessment, and that the finding that Smith can perform sedentary work is not based on substantial evidence. *Id.* at 1178. In addition, Smith argues that the ALJ failed to assess his symptoms and physical limitations during the relevant period, because "he failed to ask questions during the hearing which explicitly referred to the time period between the 2006 accident and the date last insured on December 31, 2012." *Id.* at 1179.

The ALJ has the responsibility for reviewing all the evidence in making his determinations. 20 C.F.R. § 404.1527(e)(2). Although the ALJ reviews and considers all the evidence before him, the responsibility for assessing the claimant's residual functional capacity rests with the ALJ. 20 C.F.R. § 404.1546(c). Pertinent here, a claimant's RFC is defined as the most the claimant can do, despite the limitations caused by his physical and mental impairments. 20 C.F.R. § 404.1545(a)(1). The ALJ must "articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Commissioner*, No. 00-4200, 2002 WL 343402, at *5 (6th Cir. Mar. 4, 2002) (per curiam) (quoting *Bencivengo v. Commissioner*, 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)).

While the ALJ must consider all the evidence in the record, there is no requirement that the ALJ discuss all the evidence or, more specifically, every limitation considered by Dr.

16

Thompson. *See, e.g.*, *Atkinson v. Astrue*, No. 09-1369, 2010 WL 2977593, at *3 (10th Cir. July 29, 2010) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996); *Thacker v. Commissioner*, No. 02-6138, 2004 WL 1153680, at *3 (6th Cir. May 21, 2004) (ALJ need not discuss every piece of evidence in the record). "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, No. 04-5021, 2004 WL 2633448, at *6 (6th Cir. Nov. 18, 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).

While the ALJ here did not give controlling weight to Dr. Thompson's opinions in formulating claimant's RFC, he did find that claimant had work-related limitations supported by the record. (R. 10, tr., at 41.) The ALJ provided a lengthy discussion of the medical evidence of record in support of his RFC assessment. *Id.* at 41-45. Moreover, it is the claimant's burden to demonstrate that he is disabled, and claimant does not point to any medical opinion evidence for the relevant time period that would support greater limitations than those assessed by the ALJ in the decision's RFC. *See Walters*, 127 F.3d at 529 (plaintiff bears burden of proof at Step Four); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990); *Kling v. Astrue*, No. 3:12CV143, 2013 WL 785332, at *3 (S.D. Ohio Mar. 1, 2013) (claimant bears ultimate burden of proof on issue of disability, citing *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984)); *see generally* R. 11, PageID #: 1177-1179.

The ALJ's decision indicated that the period of time relevant to the decision was from the alleged onset date of March 10, 2007, through the date last insured, December 31, 2012. (R. 10, tr., at 37.) In addition, the ALJ acknowledged the record contained "no further medical treatment or examinations after [the] third epidural steroid injection in February 2007, until after

17

the expiration of the claimant's date last insured." *Id.* at 42. Plaintiff has confirmed that includes the relevant period. *Id.* at 58; 1161, 1175. At the hearing, the ALJ asked claimant about how long he was standing or sitting, and how much he had to lift, at a job which he began in January 2006, a job which continued into the relevant period. *Id.* at 62-64. Also at the hearing, claimant's counsel asked about Smith's use of a cane in 2010. *Id.* at 72. Counsel elicited testimony from Mrs. Smith concerning claimant's physical condition in the relevant period. *Id.* at 78-80. While the ALJ did inquire about Smith's current limitations as well, *see* tr., at 67-70, it is incorrect to conclude that the ALJ did not have evidence at the hearing for the relevant period.

The court finds that record evidence supporting the RFC is such that a reasonable mind might accept it as adequate support for the decision, and that the decision is supported by substantial evidence. *See Blakley*, 581 F.3d at 406; *Wright*, 321 F.3d at 614.

### VIII. CONCLUSION

For the foregoing reasons, the court finds that the Commissioner's final decision is supported by substantial evidence and recommends that it be affirmed.

                                                      s/ David A. Ruiz
                                                      David A. Ruiz
                                                      United States Magistrate Judge

Date: <u>January 18, 2019</u>

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).